**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| GINGER M. ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: 1:17-cv-6 |
| v. | ) | |
| | ) | Judge Steger |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

## I.      Introduction

Plaintiff seeks judicial review pursuant to Section 205(g) of the Social Security Act

("Act"), 42 U.S.C. § 405(g), of the denial by the Commissioner of the Social Security

Administration ("SSA") of her application for disability insurance benefits under Title II of the

Act, 42 U.S.C. §§ 401-434.  The parties have consented to entry of final judgment by the United

States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court

of Appeals for the Sixth Circuit [Doc. 13].  For the reasons stated herein, Plaintiff's Motion for

Judgment on the Administrative Record [Doc. 9] shall be **DENIED,** the Commissioner's Motion

for Summary Judgment [Doc. 14] shall be **GRANTED**, and the decision of the Commissioner

shall be **AFFIRMED**.  Judgment in favor of the Defendant shall be entered.

## II.      Background

### A.  Procedural History

Plaintiff applied for disability insurance benefits under Title II of the Act, 42 U.S.C. §§

401-434. [Doc. 5, Tr. 122-25]. Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the SSA. Plaintiff's claim was denied and she requested a hearing before an administrative law judge ("ALJ"). [Doc. 5, Tr. 75-76]. On January 8, 2016, following a hearing, the ALJ found that Plaintiff was not disabled. [Doc. 5, Tr. 7-23]. On November 10, 2016, SSA's Appeals Council denied Plaintiff's request for review. [Doc. 5, Tr. 1-3]. Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. Plaintiff filed a Complaint in the district court on January 9, 2017. Subsequently, Plaintiff filed a motion for judgment on the administrative record and the Commissioner filed a motion for summary judgment. Both motions are ripe for review.

**B.  The ALJ's Findings**

After considering the entire record, the ALJ made the following findings:

1.    The claimant last met the insured status requirements of the Social Security Act on March 31, 2009.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2007 through her date last insured of March 31, 2009.  (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments:  degenerative disc disease; disorder of the muscle, ligaments, and fascia; and COPD.  (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR

404.1567(b) except posturals limited to occasional. The claimant can never climb ladders, ropes or scaffolds and never have exposure to dangerous machinery. Handling and fingering are limited to frequent. The claimant must avoid exposure to fumes, dust, gases and pulmonary irritants. The claimant is limited to occasional neck extension, occasional neck flexion, and occasional neck rotation. The claimant can understand, remember, and carry out simple, routine instructions and can make simple work related decisions/judgments for unskilled work.

6.  Through the date last insured, the claimant was unable to perform any past relevant work. (20 CFR 404.1565).

7.  The claimant was born on May 13, 1961, and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured. (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English. (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2007, the alleged onset date, through March 31, 2009, the date last insured. (20 CFR 404.1520(g)).

[Doc. 5, Tr. 12-20].

## C. Relevant Facts

### 1. Plaintiff's Age, Education, and Past Work Experience

At the time of the hearing before the ALJ on December 10, 2015, Plaintiff was 54 years old. She was 46 years old at the time of her alleged onset of disability on August 1, 2007, and

she has past relevant work selling pictures for a photography company, as a clerk in a home improvement store, in retail shoe sales, and in a furniture mill. [Doc. 5, Tr. 146]. She completed the tenth grade and subsequently earned General Education Development high school equivalency diploma. [Doc. 5, Tr. 146, 210]. She received medical transcription training in 2009. [*Id*].

### 2. Plaintiff's Testimony and Medical History

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

## III. Analysis

### A. Standard of Review

To establish disability under the Social Security Act, a claimant must establish she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity she is not disabled; (2) if the claimant does not have a severe impairment she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment she is disabled; (4) if the claimant is capable of returning to work she has done in the past she is not disabled; (5) if the claimant can do other work that exists in significant numbers in

the regional or the national economy she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that she cannot return to her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which she can perform considering her age, education and work experience. *Richardson v. Sec'y, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389 (1971); *Landsaw v. Sec'y, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not

before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

## B. Discussion

Plaintiff challenges the ALJ's determination that she was not under a disability, as defined by the Act, from August 1, 2007, the alleged onset date, through March 31, 2009, the date last insured. She presents the following three issues for review:

**1. Whether the ALJ failed to apply the proper legal standard in finding that Plaintiff's testimony and symptoms were not fully credible, and whether his decision is supported by substantial evidence.**

Plaintiff argues that the ALJ committed various errors in determining that her statements regarding her symptoms were not fully credible, and that the ALJ's finding was not supported by substantial evidence. Plaintiff asserts, first, that the ALJ mischaracterized the activities she performs on a daily basis and the nature, intensity, and frequency of daily and work activities she can perform. She asserts that, contrary to the ALJ's finding, she does not perform significant activities, and certainly not without significant restrictions. For example, she asserts, she can do light housework and chores, but she can only do a little and then must rest. She asserts that she can manage medications and finances and visit with family, but those activities do not necessarily involve her physical impairments, and she did not allege any mental impairments.

6

She argues that, contrary to the ALJ's inference regarding her daily activities, SSA regulations and case law dictate that a claimant's ability to perform simple functions such as driving, grocery shopping, or dishwashing does not reflect an ability to perform substantial gainful activity where those activities are performed on an intermittent basis due to pain.

Plaintiff further argues that, even if the ALJ accurately stated the proof of her daily activities, her ability to perform light housework and limited chores with assistance does not support a finding that she is able to perform light work, or even a full range of sedentary work. She also argues that the ALJ failed to properly develop and consider her testimony and found inconsistencies in her testimony where none existed. She asserts that the ALJ erroneously stated that her neck and back pain and respiratory impairments improved with medication, when her testimony and medical records support that her respiratory problems continued to worsen. She asserts that medication helps, but she remains in significant pain, and a claimant who cannot work without significant pain is disabled. Plaintiff asserts that the ALJ also erred by finding there were no significant reports of back or neck pain restricting her overall function because her cervical spine impairments were established by objective medical evidence. She also notes that she credibly testified that she could walk no more than a half mile without rest during the relevant period and had to stay home from work to lie down three or four days each month. She points out that Vocational Expert ("VE") Rodney Coles Well testified that an individual typically could not sustain competitive employment under such conditions. Finally, Plaintiff argues that the ALJ drew an impermissible inference that her spine impairment was less severe than alleged based on her decision not to have surgery without first considering her reasons for the decision.

In her motion for summary judgment, the Commissioner responds that the ALJ properly considered Plaintiff's symptoms, and that substantial evidence supports the ALJ's findings. The Commissioner asserts that the ALJ partially credited Plaintiff's allegations. As a result, he included significant limitations in the determination of Plaintiff's residual functional capacity ("RFC"), including: (1) postural restrictions such as occasional neck extension, flexion, and rotation, in light of Plaintiff's testimony that she had difficulty turning her head during the relevant period; (2) limited exposure to fumes, dust, gases, and pulmonary irritants as a result of her testimony that she could not tolerate cologne and fumes from diesel trucks; and (3) limitations to simple, unskilled work to account for restrictions due to pain. The Commissioner asserts that, in discounting Plaintiff's subjective allegations of disabling pain, the ALJ considered the objective medical evidence, Plaintiff's treatment history, her activities of daily living, and her inconsistent statements.

The Commissioner argues that, contrary to Plaintiff's assertion, the objective medical evidence showed only a moderate spine impairment during the relevant period; Plaintiff managed her symptoms with over-the-counter medications; she sought no treatment related to her cervical spine impairment; and no medical providers noted any related functional limitations. The Commissioner argues that, similarly, the evidence does not support that Plaintiff had to lie down three or four times per month due to neck pain, noting that Plaintiff did not allege disability due to a neck impairment in her Disability Report and she testified that she could perform work in a shoe department despite her neck impairment.

The Commissioner also disputes Plaintiff's assertion that the ALJ made an improper inference regarding her disinclination to have neck surgery, noting that the ALJ accepted

8

Plaintiff's own testimony regarding the decision. The Commissioner argues that the record does not support Plaintiff's claim of disability due to chronic obstructive pulmonary disease ("COPD") because she testified only that she could not go camping or be around cologne or vehicle fumes; a pulmonary functioning test showed only moderate obstruction with mild decreased forced vital capacity ("FVC"); her condition required little medical treatment; and there is no documentation of functional limitations. The Commissioner asserts that the ALJ properly considered Plaintiff's daily activities as one factor in assessing her credibility, and substantial evidence supports the ALJ's conclusion that her physical impairments were not disabling during the relevant period.

A claimant's subjective complaints can support a claim for disability if there is also objective medical evidence of an underlying medical condition in the record. *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). An ALJ, however, is "not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id*. (quotations omitted). An ALJ's credibility determination is afforded great weight, provided it is supported by substantial evidence. *Id*.

The ALJ must follow a two-step process for evaluating an individual's reported symptoms: (1) determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms; and (2) evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. SSR 96-7p[1];

---

[1] SSR 96-7p was superseded by SSR 16-3p on March 28, 2016, after the ALJ's decision in this case. Regardless, any differences in the superseding regulation do not affect the

20 C.F.R. § 404.1529. In Step (2), the ALJ must examine the entire case record, including the objective medical evidence; the individual's own statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the case record. SSR 96-7p; 20 C.F.R. § 404.1529.

In analyzing a claimant's subjective allegations, the ALJ examines the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. § 404.1529. Where the degree of an individual's subjective complaints does not match the frequency or extent of treatment sought, the ALJ may find the claimant's statements less credible, but the ALJ first must consider any explanations the claimant may provide for failing to seek treatment or failing to follow treatment as prescribed. For example, the claimant's symptoms may be relieved with over-the-counter medication, or the symptoms may not be sufficiently severe to prompt the claimant to seek ongoing medical attention. SSR 96-7p.

In his decision, the ALJ determined that, through the date last insured, Plaintiff had degenerative disc disease ("DDD"); disorder of the muscle, ligaments, and fascia; and COPD, and that each of these medically determinable impairments was severe [Doc. 5, Tr. 12]. The ALJ determined, however, that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. [Doc. 5, Tr. 13]. The ALJ then determined, based on consideration of the record as a whole, that Plaintiff had the RFC to perform light work, with posturals limited

arguments at issue here.

to occasional. [*Id.*]. The ALJ specifically noted that Plaintiff can never climb ladders, ropes, or scaffolds, and can never have exposure to dangerous machinery; that handling and fingering are limited to frequent; that she must avoid exposure to fumes, dust, gases, and pulmonary irritants; that she is limited to occasional neck extension, flexion, and rotation; and that she can understand, remember, and carry out simple, routine instructions and can make simple work-related decisions/judgments for unskilled work. [*Id.*].

In consideration of Plaintiff's claim that she was unable to work during the relevant period due to problems with her neck and breathing, the ALJ took note of the following statements by Plaintiff: she had been advised by her doctors to undergo neck surgery for the insertion of metal bars into her neck but declined; she had worked at a Belk's department store but quit after she was informed she would be transferred to the perfume department because the perfumes would aggravate her COPD; her breathing problems had become worse over the last three years; she had smoked for many years and stopped only three years prior to the hearing; she had worked for a photography company but quit because her neck impairment prevented significant travel by car; her symptoms would come and go; she was sometimes unable to turn her head; she underwent chiropractic treatment for her neck, which improved her symptoms somewhat, but she was unsure of the dates of treatment; she did not file for disability prior to 2013 because she did not think she would be eligible; she experienced pain in her neck prior to March 2009 and described the pain as an eight or nine on a scale of one to ten, but subsequently stated that, most of the time, the pain was a five; she often had to lie down during the day due to pain; she would experience a burning sensation in her neck that radiated down her arm; she would experience tingling and numbness, but not all the time; COPD was her primary problem

prior to March 2009 and limited her daily activities during the relevant period; she was not able to go camping, be around diesel trucks, or walk long distances due to her breathing problems; she had some problems climbing stairs and could only walk for a half mile before having to stop; she could lift objects but could not carry them; she could carry less than 20 pounds; she had some problems riding in a car; she could drive, but when her neck acted up she could not; she did not drive very much prior to March 2009; and her neck problems did not affect her working in a retail shoe department.  [Doc. 5, Tr. 14-15].

The ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to cause her alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible [Doc. 5, Tr. 15]. The ALJ determined that the medical record as a whole did not reveal evidence of significant functional limitations prior to March 31, 2009, and treatment records did not support Plaintiff's alleged functional limitations during that time [*Id.*].  The ALJ made extensive findings in support of his credibility determination, noting that, contrary to Plaintiff's allegations, treatment records revealed good control and/or management of Plaintiff's adverse symptoms during the relevant period with use of medication and without evidence of significant side effects [Id.].  Specifically, treatment records revealed good pain management with the use of pain medication, and a reduction in COPD symptoms with medication despite Plaintiff's continued use of cigarettes during the relevant time [*Id.*; *see also* Doc. 5, Tr. 215-22, 238-51, 260-80].

The ALJ also noted that Plaintiff indicated in an Adult Function Report that Plaintiff could perform many activities of daily living without significant restriction from her impairments [Doc. 5, Tr. 15; *also see* Doc. 5, Tr. 174-83].  Specifically, the ALJ noted that Plaintiff claimed

she "could care for her personal care needs, prepare simple meals, go out alone, shop in stores, pay bills, and visit with others" [Doc. 5, Tr. 15]. The ALJ noted Plaintiff's testimony that her neck pain did not affect her ability to work in the shoe department at Belk's, and that she did not file her disability claim until 2013 because she did not think she would qualify [Doc. 5, Tr. 16, 34-35]. The ALJ also noted that Plaintiff did not indicate that her COPD affected her work in the shoe department at Belk's, that she testified that she left her job only when she faced transfer to the perfume department, and that she continued to smoke cigarettes during the relevant period despite her diagnosis with COPD [Doc. 5, Tr. 17, 31-32]. The ALJ found that the medical evidence was consistent with Plaintiff's testimony regarding her ability to work and perform activities of daily living prior to March 31, 2009 [Doc. 5, Tr. 16].

Plaintiff argues that the ALJ mischaracterized her ability to perform daily activities, but substantial evidence supports the ALJ's findings. Plaintiff indicated in her March 2014 Adult Function Report that she could do light housework and some laundry, though she had to take breaks; she could drive a car, go out alone, and shop, though her family helped her carry in the groceries; she could pay bills and take care of her finances; she prepared simple meals daily, though her family helped; and she visited and chatted with others almost daily [Doc. 5, Tr. 174-80]. Moreover, she stated that she was limited in her activities by her COPD, which she testified in the 2015 administrative hearing had become extremely bad over the preceding three years and had become really bad in 2009 or 2010, suggesting her activities were less restricted during the relevant time period [Doc. 5, Tr. 31, 174-80].

Plaintiff further argues that, even if accurate, the daily activities cited by the ALJ do not support her ability to perform substantial gainful activity. She cites two cases in support of her

argument. In *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007), the Sixth Circuit determined that minimal daily functions such as driving, grocery shopping, housecleaning, reading, caring for dogs, and watching the news were not comparable to typical work activities – specifically, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, as stated in 20 C.F.R. § 416.921(b). The Sixth Circuit found that the ALJ in that case had both mischaracterized the scope of the claimant's activities and also failed to examine the physical side effects of those activities coextensive with their performance [*Id.*]. For example, the Court noted that, although the claimant liked to read, she had difficulty holding a book; that she cared for her dogs, but that only involved opening the door to let them out; and that she did very little driving because she could not sit for longer than a few minutes [*Id.*]. The Court also noted that the ALJ failed to mention that the claimant received assistance with many of her activities and personal care from her children [*Id.*].

Similarly, in *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967), the Circuit Court determined that the claimant's ability to perform simple functions did not necessarily indicate an ability to engage in substantial gainful activities where those activities were intermittent and done in spite of the intense pain suffered by the claimant with movement. The Court noted that the claimant's testimony regarding his pain was confirmed by every doctor who examined him, that he walked with a cane and could go no more than a block, and that he appeared to be "always conscious of ever present pain" [*Id.*].

The circumstances of the present case are distinguishable. Although Plaintiff noted in her 2014 report that she received help from family with cooking, housework, and carrying groceries, she also testified that, during the relevant time period in 2007, 2008, and 2009, her neck pain, on

a scale of one to ten, was "most of the time, tolerable at five," and her COPD had become significantly worse in recent years [Doc. 5, Tr. 31, 35]. She also indicated that, although she had given up hobbies as a result of her COPD and could not be around cologne or vehicle fumes; during the relevant time she did "normal every day stuff, the housework and stuff like that"; and she could walk approximately half a mile before she would need to stop [Doc. 5, Tr. 38-39]. Moreover, as the ALJ noted, the record showed evidence of minor disc bulges and moderate DDD in 2006, but Plaintiff's reported neck and back pain were controlled with medication; there was no evidence of significant side effects or functional restrictions; and later medical records dealing with Plaintiff's COPD and other needs made little to no mention of neck or back pain and reported normal physical findings [Doc. 5, Tr. 15, 215-27, 236-58]. Notably, medical evidence indicated only moderate obstruction as a result of Plaintiff's COPD during the relevant period and treatment with medication, and it supports that Plaintiff's COPD grew more severe subsequent to the time in question [Doc. 5, Tr. 236-84].

Although Plaintiff challenges the ALJ's findings that her testimony was inconsistent and that the record failed to support any significant functional restrictions prior to the date last insured, she cites to nothing in the record that contradicts the ALJ's determinations. Plaintiff correctly asserts that her testimony and medical records support that her COPD worsened over time; however, the evidence also supports that Plaintiff's symptoms from her neck and respiratory impairments improved with medication, though that medication became less effective as her COPD became more severe [*See* Doc. 5, Tr. 236-51, 265-84]. Her assertion that her cervical spine impairment was established by objective medical evidence is supported by the ALJ's determination that her DDD, disorder of the muscle, ligaments, and fascia, and COPD all

were severe impairments. [Doc. 5, Tr. 12]. However, that does not refute the ALJ's further determination that there were no significant reports of back or neck pain restricting Plaintiff's overall function.

Regarding Plaintiff's argument that the ALJ made an improper inference that her neck impairment was less severe than alleged based on her decision not to have surgery, Plaintiff testified that she elected not to have recommended surgery because it was scary to think about and, "I thought as long as I could deal I would" [Doc. 5, Tr. 30-31]. To the extent that the ALJ inferred from this that Plaintiff's pain was less severe than alleged, such inference is reasonable. Moreover, the ALJ stated that he had considered the record as a whole, including Plaintiff's testimony and symptoms, the objective medical and other evidence, and opinion evidence, and substantial evidence supports the ALJ's assessment of Plaintiff's symptoms [Doc. 5, Tr. 10, 14-18].

> **2. Whether the ALJ failed to apply the proper legal standard in his decision to deny benefits to Plaintiff in light of medical evidence obtained after the date last insured, and whether his decision is supported by substantial evidence.**

Plaintiff argues that the ALJ failed to consider medical records from after the date last insured in determining whether she was disabled during the relevant prior period. She argues that the ALJ cited October 31, 2014, records demonstrating that her pulmonary functioning met the criteria for listing section 3.02, but failed to develop the record to determine whether the same condition existed prior to March 31, 2009, or to state reasons for rejecting the evidence.

The Commissioner responds that substantial evidence supports the ALJ's decision. The Commissioner assets that Plaintiff must demonstrate that she became disabled before the expiration of her insured status, and she failed to show that her 2014 tests were reasonably

proximate to the relevant period. The Commissioner argues that testimony and evidence indicate Plaintiff's condition was significantly different in 2014 than it was during the relevant period; that Plaintiff fails to explain what the ALJ should have done to develop the record for the relevant period; and that Plaintiff's testimony during the hearing focused almost entirely on the relevant period. The Commissioner asserts that the ALJ was not required to develop the record further because, given the time gap, doing so would not have provided relevant information about Plaintiff's functioning prior to March 2009, and the available medical evidence from the relevant period was sufficient.

For the reasons that follow, I concur with the Commissioner's assessment. First, the parties agree that the results of Plaintiff's pulmonary functioning test on March 8, 2007, before her August 1, 2007, alleged onset date, did not meet the level of Listing 3.02 [Doc. 5, Tr. 27]. Assuming, as Plaintiff contends, that the October 31, 2014, test demonstrates that her COPD meets the listing criteria, it was conducted five years after the relevant period. Moreover, medical records and other evidence do not support that the same condition existed during the relevant period. *See Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976) (noting that medical evidence of a subsequent condition of health may be used to establish the existence of the same condition at the preceding time if it is reasonably proximate to the preceding time). On the contrary, the record indicates that Plaintiff's respiratory condition during the relevant period was much less severe than it became in 2014.

Specifically, medical records from immediately prior to the relevant period indicate no more than moderate COPD [Doc. 5, Tr. 121-22, 274-85]. An examination from August 2007 indicated exacerbated COPD and wheezing, but it also noted normal respiratory effort and

17

excursion, and Plaintiff was prescribed medication [Doc. 5, Tr. 274-75]. There is little subsequent evidence regarding Plaintiff's COPD until after the date last insured. Moreover, medical records from 2014 indicate that Plaintiff reported her COPD was getting worse; that her exertional shortness of breath had worsened over the past year; and that her inhalers were "not working as effectively as they did in the past" [Doc. 5, Tr. 239]. Plaintiff's testimony supports this trend. Plaintiff testified in December 2015 that her breathing problems had gotten "extremely bad" over the past three years, and that they had gotten "really bad" in perhaps 2009 or 2010 [Doc. 5, Tr. 31]. She testified that, prior to March 31, 2009, she could walk about half a mile before stopping, but at the time of the hearing she could walk "hardly any distance" without having to stop [Doc. 5, Tr. 39]. She also testified that, during the relevant period, she could climb stairs, stopping to catch her breath as she went, but at the date of the hearing she could not [Doc. 5, Tr. 40]. Thus, evidence and testimony do not support that Plaintiff's condition during the relevant period was comparable to her condition in 2014. Although Plaintiff argues that the ALJ should have further developed the record, the ALJ considered the available medical evidence from before, during, and after the relevant period, and Plaintiff was specifically questioned in the administrative hearing about the severity of her COPD during the relevant time. Plaintiff does not specify what more the ALJ should have done. Plaintiff also argues that the ALJ failed to state reasons for rejecting the 2014 evidence, but the ALJ explicitly noted the October 31, 2014, records and stated that those findings were from outside the period of review [Doc. 5, Tr. 16]. Thus, the ALJ's determination was proper and supported by substantial evidence.

3.  **Whether the ALJ failed to apply the proper legal standard in determining Rogers is able to perform light work, and whether his decision is supported by substantial evidence.**

Plaintiff argues that the ALJ erred by failing to find that she is limited to performing less than a full range of sedentary work and, more specifically, by failing to consider the proof of her severe medically determinable impairments and failing to find her testimony fully credible. She argues that the ALJ's finding that she was capable of performing light work with certain limitations was contradicted by the record evidence. She asserts that physical impairments documented in medical records are consistent with her pain and other symptoms, and that the ALJ failed to appreciate the consistency between the objective findings – specifically, a 2006 MRI and physical examinations – and her testimony. She asserts that her symptoms limited her ability to walk and carry items, as required for light work. She further asserts that the physical limitations resulting from her neck impairment and COPD, combined with her educational background, do not qualify her for direct entry into any employment, and support a finding of disability.

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff could perform a restricted range of light work during the relevant period. The Commissioner argues that medical records indicate that Plaintiff had moderate DDD but managed her symptoms with over-the-counter medications and did not report any neck pain or other symptoms from her DDD to any medical provider during the relevant period. The Commissioner asserts that no medical providers noted any functional limitations related to Plaintiff's neck impairment, nor did they refer her to a specialist. The Commissioner asserts that

the ALJ gave Plaintiff considerable benefit of the doubt and properly included limitations in Plaintiff's RFC that were consistent with the record as a whole.

RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p.  An RFC assessment considers "only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  *Id*.  The RFC assessment first must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  *Id*.  Subsequently, the RFC may be expressed in terms of exertional levels of work – i.e., sedentary or light.  *Id*.

Contrary to Plaintiff's assertion, substantial evidence supports the ALJ's determination of Plaintiff's RFC.  As noted above, the ALJ took extensive note of Plaintiff's medical history and determined that the record evidence did not comport with the extent of her reported symptoms. Indeed, the ALJ specifically noted an August 3, 2006, MRI, which revealed that Plaintiff's cervical spine did not demonstrate soft disc protrusion, extrusion, or bony spinal stenosis [Doc. 5, Tr. 15, 226].  The report noted evidence of a hard and soft disc bulge to a minor degree at C4-5; DDD with a hard and soft disc bulge at C5-6; and associated bilateral degenerative uncal spurs at C5-6, with some encroachment on the neural foramina [*Id*.].  The ALJ also noted a July 24, 2006, record noting moderate DDD at C5-6 with moderate anterior and lesser posterior spurring [Doc. 5, Tr. 15, 225].  However, the ALJ also noted subsequent treatment records indicating that Plaintiff's reported neck and back pain were controlled with medication without significant side effects or functional restrictions [Doc. 5, Tr. 15, 215-27, 238-58].  As the ALJ noted, medical

records from during and after the date last insured reveal overall normal physical findings without restriction [Doc. 5, Tr. 17, 265-85].

Although Plaintiff testified that, three or four times per month, she could not hold up her neck and had to stay home to lie down, she also testified that her neck did not affect her work in the retail shoe department at Belk's, she could walk up to a half mile before having to stop due to her COPD, and she could lift items, though she had some difficulty carrying them [Doc. 5, Tr. 30-42]. Notably, after detailing the medical evidence, the ALJ noted that he gave some weight to opinion evidence provided by medical consultant, Dr. Joseph Curtsinger, who found that Plaintiff had severe impairments of DDD and disorder of the muscle, ligaments, and fascia, but little weight to the findings of medical consultant Dr. Charles Settle, who found that Plaintiff had no severe impairments in the relevant time period. [Doc. 5, Tr. 18]. Thus, Plaintiff's argument that the ALJ failed to consider proof of her severe medically determinable impairments lacks merit. Plaintiff's assertion that the ALJ erred by failing to find her testimony fully credible has been addressed above. Accordingly, I find that substantial evidence supports the ALJ's determination of Plaintiff's RFC.

**IV.     Conclusion**

Having carefully reviewed the administrative record and the parties' briefs filed in support of their respective motions, the Plaintiff's Motion for Judgment on the Administrative Record shall be **DENIED**, the Commissioner's Motion for Summary Judgment shall be **GRANTED**, and the decision of the ALJ shall be **AFFIRMED**.  Judgment shall be entered in favor of the Defendant.

**ENTER**.

/s/  *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE